Jerrell Monroe Sparks v. Commissioner.
Sparks v. Commissioner
Docket No. 72109.
United States Tax Court
T.C. Memo 1960-154; 1960 Tax Ct. Memo LEXIS 136; 19 T.C.M. (CCH) 807; T.C.M. (RIA) 60154; July 18, 1960
Harry I. Goodley, Esq., 6416 Lindenhurst Avenue, Los Angeles, Calif., for the petitioner. Edward M. Fox, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This proceeding involves a deficiency in income tax and an *137 addition thereto for the taxable year 1952 in the amounts set forth below: Addition to Tax
Sec. 291(a),
Year
Deficiency
I.R.C. 1939
1952 $496 $124
The issues for decision are: (1) Whether petitioner was entitled to claim his mother, sister, and brother as dependents for the taxable year 1952; (2) whether petitioner qualified as a "head of household" for that year; (3) whether petitioner was entitled to a casualty loss deduction for damage to his automobile in a traffic accident; (4) whether attorney fees and bail expenses incident to that accident constituted deductible expenditures; (5) whether petitioner has substantiated miscellaneous deductions taken for a theft loss, interest payments, taxes, contributions, and medical expenses; and (6) whether petitioner's failure to file a timely return was due to reasonable cause and not willful neglect. Findings of Fact Some of the facts were stipulated, are so found, and are incorporated herein by this reference. Petitioner, Jerrell Monroe Sparks, was unmarried during the calendar year 1952. He filed his Federal income tax return for that year on March 15, 1954, with the director of internal revenue *138 for the district of Los Angeles, California. During the taxable year in issue, petitioner was employed as a dining car waiter by the Southern Pacific Company. He performed his services aboard trains which ran between Los Angeles and various other cities, averaging approximately 12 to 15 days each month away from home. His adjusted gross income for 1952, which totalled $3,122.10, was comprised of wages of $2,744.10 paid by the Southern Pacific, and tips in the amount of $378. Also, he received unemployment insurance of at least $450. In addition, he borrowed money during 1952 from loan companies, a bank, friends, and relatives. During the year in issue, petitioner lived in a house which he leased from the public housing authority for a monthly rental of $50. The utilities were furnished by the housing authority at no extra charge. Petitioner's widowed mother, his 16-year old sister, and his 17-year old brother shared the home with him. None of these three individuals was employed in 1952. However, petitioner's mother received public assistance from the Los Angeles Department of Charities in that year of $1,449.30. The Sparks household was run from a "common pot." After meeting *139 his immediate expenses, petitioner contributed whatever monies he had remaining from his salary, tips and unemployment insurance compensation to this "common pot." In addition, his mother commingled the public assistance funds with those supplied by petitioner. From this common source came the money to meet family expenses. On his 1952 return, petitioner claimed dependency exemptions for his sister and his brother, both of which were disallowed by respondent. On December 3, 1951, petitioner's 1941 automobile, driven by a friend, was involved in an accident. The automobile was uninsured at the time of the accident. It was sold for scrap in February of 1952 for some $35. When the accident occurred petitioner was not in the Los Angeles area and the first time thereafter he saw the car was in January 1952. Incident to the accident, petitioner paid on behalf of his friend who was driving his car, attorney fees and bail expenses of $500. Of this amount $300 in attorney fees were paid during 1952. On his return for 1952 petitioner claimed a deduction in the amount of $350 for "Total Loss of 1941 Buick," and a deduction in the amount of $500 for "Attorney Fees & Bail." Respondent disallowed *140 both these deductions in full. In 1952, petitioner had three suits stolen from a cleaner where he had taken them for cleaning and pressing. Two of the suits were relatively new; the third was an old suit. The cleaning establishment gave petitioner a "sports ensemble" to replace the suits which were stolen. On his return petitioner deducted the amount of $130 for "3 Suits (Stolen from cleaner Rec. $40.00)." Respondent disallowed this deduction in full. Petitioner sustained a theft loss of at least $100 attributable to the theft of these suits. In 1952 petitioner purchased an automobile which he financed through a loan secured from a commercial loan company. He also purchased a television set during that year, the purchase of which he financed through a bank loan. In addition, he made two "salary loans" during 1952. On his return, petitioner deducted the amount of $111.60 as interest on these loans. Respondent disallowed this deduction in full. Petitioner made interest payments during 1952 totalling at least $60. On his return for 1952, petitioner claimed a deduction for sales taxes in the amount of $37.60. Respondent disallowed this deduction in full. Petitioner paid sales taxes *141 during 1952 of at least $20. During 1952, petitioner paid premiums on group hospitalization insurance. On his return he deducted $52 for medical expenses; $42 of which was for "Medical Insurance," and $10 for "Dental." Respondent disallowed this deduction in full. Petitioner incurred medical expenses of at least $42 during 1952. On his 1952 return, petitioner deducted a total of $144 for contributions to "Church, Negro Welfare, P.T.A., Red Cross, Comm. Chest, Disabled Vets, Boy Scouts, Salvation Army." Respondent disallowed this deduction in full. Petitioner made deductible contributions of at least $60 during 1952. During the taxable year petitioner was required by his employer to wear prescribed dress according to the particular train to which he was assigned. This dress included a black safety shoe, dark blue serge trousers with a light blue stripe down the side, white shirt, bow tie, and cap. In addition he was required to furnish a travelling bag. On his return for 1952, petitioner deducted $204 for "Work Clothes & Supplies." Respondent disallowed this deduction in full. Petitioner deducted $48 for "Union Dues" on his 1952 return, all of which was disallowed by respondent. *142 Opinion Now for the first time, petitioner claims he is entitled to compute his 1952 Federal income tax using the rates prescribed for the "head of household" by section 12(c) of the 1939 Code, and further claims that he is entitled to a dependency exemption for that year for his mother. Respondent contends petitioner has failed to carry his burden of proving that he contributed more than one-half the total funds expended for the support of his mother, or that he provided over one-half the cost of maintaining the Sparks household during 1952. In addition to disallowance of petitioner's dependency exemptions for his sister and brother, respondent disallowed some $1,577.20 in itemized personal deductions claimed by petitioner, for lack of substantiation, and substituted in lieu thereof the standard deduction of 10 per cent. He further increased petitioner's taxable income by $153, which adjustment petitioner has conceded to be correct. Finally, he determined petitioner was liable for an addition to tax under section 291(a) for failure to file a timely income tax return. The issues are factual in nature, the burden of proof as to each resting squarely on the petitioner. Borrowing *143 an oft-used phrase, we can only say there has been "a massive failure of proof" on his part. To substantiate his claims petitioner presented only his return and his oral testimony; the latter comprised of self-serving declarations which were at times vague and contradictory. Whether petitioner is entitled to a "head of household" status for 1952, depends upon whether he maintained as his home a household which was the principal place of abode of an individual for whom he was entitled to a dependency exemption under section 25(b), and whether he furnished over half the cost of maintaining that household during the taxable year. In short, as one prerequisite, petitioner must establish the amount he contributed towards the support of the household, and further show that this amount was in excess of one-half of the total cost of maintaining that household. The instant record is silent insofar as the amount contributed by petitioner towards the support of the Sparks household is concerned. We have only his statement that anything in excess of the amounts be expended on his personal necessities was contributed to the "common pot." How much this excess was we do not know. Absent this, we *144 are unable to determine the total cost of running the Sparks household for the taxable year 1952, much less to determine whether petitioner furnished more than one-half the total cost. While we know petitioner's mother received some $1,449 public assistance funds during 1952, presumably all of which was used to support the family, this in no way serves to prove petitioner's contribution. Petitioner has failed to establish his right to file as the "head of household" for the taxable year 1952. Much the same is true with respect to the dependency exemptions claimed by petitioner for his mother, sister, and brother. Again, the record fails to reveal how much petitioner contributed toward the support of these individuals during the taxable year under consideration. At trial, petitioner was only able to estimate that whatever he had left over after meeting his own expenses went toward the support of the family. We have no doubt that this was true, but the necessary element of proof for a dependency exemption, that the taxpayer contributed over one-half the total support of the individual claimed during the taxable year, is missing. Furthermore, the fact that the family had available *145 $1,449 in public assistance funds during the year makes it necessary that petitioner spell out with specificity the amount which he contributed to the support of the claimed individuals. He has failed to do so and his claims must be denied. So far as the casualty to petitioner's automobile is concerned, the record establishes that the accident occurred in December of 1951. Section 23(e) specifically limits any casualty loss deduction to "losses sustained during the taxable year." It seems clear that the year in which the loss should have been claimed was 1951, not 1952. Petitioner apparently relies upon his inspection in January of 1952 of the damaged car as the identifiable event which fixed the year of deductibility. Losses are usually deductible in the year in which they are sustained, not in the year of their ascertainment. (C.A. 2, 1939); . Moreover, here, as was the case in , the full extent of the loss was ascertained by the due date of petitioner's 1951 Federal income tax return. We are therefore of the opinion that any casualty loss *146 sustained by petitioner as a result of the damage to his automobile was deductible in 1951, and not 1952 as claimed. The attorney fees and bail expenses paid by petitioner on behalf of his friend who was involved in the automobile accident are clearly not deductible. Petitioner was not himself involved in the accident, and, so far as this record is concerned, no claim was made against him. We must assume the expenditures were solely those of petitioner's friend, who was driving the car, and might be deductible by her, if allowable at all. It is a fundamental principle that a taxpayer may not assume the deductions of another by the simple expedient of payment. With respect to the miscellaneous itemized deductions claimed by petitioner, we have made findings of fact which dispose of each issue. These findings have been made for the most part on the basis of (C.A. 2, 1930). However, it should be noted that the aggregate of the allowable deductions evidenced by this record, and set forth in our findings, is less than that available to petitioner when the standard deduction, as allowed by respondent, is used. Thus, respondent's disallowance *147 of petitioner's itemized deductions and allowance of the standard deduction in lieu thereof is sustained. Finally, respondent determined an addition to tax for failure to file a timely Federal tax return. Petitioner's 1952 return was untimely filed on March 15, 1954, one year after its due date. Petitioner has not shown that his failure to file a timely return was due to reasonable cause. Accordingly, respondent's determination is sustained. Decision will be entered for the respondent.